UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| G3 AUTOMOTIVE, LLC and GRUBBS AUTOMOTIVE CDAL, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 3:26-cv-01681-K |
| FCA US LLC, | ) ) | |
| Defendant. | ) ) | |

### FCA US LLC'S RULE 12(b)(6) MOTION TO DISMISS

FCA US LLC ("FCA"), by and through its counsel, respectfully moves to dismiss the Complaint filed by Plaintiffs G3 Automotive, LLC ("G3") and Grubbs Automotive CDAL, LLC ("CDAL," and collectively, "Plaintiffs"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

### INTRODUCTION

Plaintiffs in this case are two corporate entities created in hope of their owners' purchase of a dealership in Dallas, Texas (the "Forest Lane Dealership") that sells and services FCA's Chrysler, Dodge, Jeep, and Ram ("CDJR") vehicles. Under state law, the terms of the dealer agreement between the Forest Lane Dealership and FCA, and the terms of the asset purchase agreement ("APA") between Plaintiff G3 and the Forest Lane Dealership, FCA's approval of Plaintiffs' proposed purchase of the Forest Lane Dealership (the "Proposed Sale") was required. However, FCA told Plaintiffs in July 2025 it would not approve the Proposed Sale, citing the poor performance of the CDJR dealership purchased by Plaintiffs' owners several months prior (the "Wichita Falls Dealership").

Plaintiffs' Complaint alleges that FCA "sabotaged" the Wichita Falls Dealership (which is not a party) by failing to allocate a sufficient inventory of vehicles to sell or provide internet leads. Plaintiffs further allege that FCA withheld approval of the Proposed Sale on "false, pretextual, and unreasonable" grounds unlawful under Texas law, including by relying on the performance of the same Wichita Falls Dealership that FCA had purportedly sabotaged. As a result, Plaintiffs assert that FCA "intentionally and willfully interfered with the APA and the business relationship between Plaintiffs and the Forest Lane Dealership, constituting tortious interference with contract and business relations.

Even taken as true, Plaintiffs' allegations fail to state a claim under the *Twombly/Iqbal* pleading standard. Tortious interference with contract and tortious interference with business relations are separate causes of action, but neither is adequately pled. With respect to tortious interference with contract, Plaintiffs fail to allege a breach of contract by their counterparty to the APA, the Forest Lane Dealership. With respect to tortious interference with prospective business relations, Plaintiffs fail to show that they have lost out on any prospective deals *other than the APA*. In addition, Plaintiffs have failed to show that FCA's actions were independently tortious or wrongful.

Moreover, both claims require proof of intentional wrongdoing by the tortfeasor. Plaintiffs, however, fail to plead any facts that show—or even suggest—that FCA acted with the intention needed to plead their claim. In particular, Plaintiffs provide no explanation as to *why* FCA would want to intentionally sabotage a new CDJR dealership when FCA relies on its dealers to sell vehicles to the public. *Twombly* and *Iqbal* make clear that it is not enough to simply assert that FCA acted with the requisite intentionality; the pleading must contain enough facts to make such a claim "plausible." The Complaint does not.

Finally, even if these claims were properly stated, FCA would still be entitled to dismissal under the defense of justification. FCA's turndown of the Proposed Sale was expressly contemplated under the dealer agreements between FCA and the Forest Lane Dealership. Consequently, FCA cannot be liable for tortious interference as a matter of law. FCA therefore respectfully requests the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Conclusory allegations that "amount to nothing more than a formulaic recitation of the elements" are "not entitled to be assumed true." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) (internal quotation omitted). "A complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

## ARGUMENT

Plaintiffs' Complaint pleads one cause of action that encompasses two separate torts: (1) tortious interference with contract, and (2) tortious interference with prospective business relations. Compl. ¶¶ 53–56. Both should be dismissed.

**I.    The Complaint Does Not Plead a Plausible Claim of Tortious Interference with Contract**

"Under Texas law, Plaintiff must allege four elements to establish tortious inference with contract: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) that proximately causes damage; and (4) actual damage or loss." *Poole v. AXA Equitable Life Ins. Co.*, No. 2:19-CV-23-Z-BR, 2020 WL 10050562, at *7 (N.D. Tex. Apr. 29, 2020). "Texas courts have made clear that entering into a contract with mere knowledge of that party's contractual obligations to someone else is not the same as inducing a breach of contract. Instead, a plaintiff must show that a defendant took an active part in persuading a party to a contract to breach it." *Id.* (cleaned up).

Plaintiffs have not stated a viable claim of tortious interference with contract because they have not pled facts showing that FCA "took an active part in persuading a party to a contract to breach it." *Id.* In fact, Plaintiffs do not allege that the Forest Lane Dealership, the counterparty to the APA, breached the contract at all. Rather, it appears the APA terminated according to its terms when FCA declined to approve the Proposed Sale, as it was permitted to do. *See* Compl. ¶¶ 30 ("The APA required, as a condition to closing, that FCA issue to G3 a new sales and service agreement. . . approving G3's owners, managers, and other designees, and permitting it to operate the Forest Lane Dealership."), 68 ("Because FCA's approval of the transfer was a condition to close under the APA, FCA's refusal to approve the transfer directly prevented the closing from occurring").

"[T]ortious interference with contract requires a breach of contract." *Unicorn Glob., Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 547 (N.D. Tex. 2020) (citing *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 422 (Tex. 2017)). Since Plaintiffs do not allege the Forest Lane Dealership breached the APA, Plaintiffs' claim must be dismissed.

Plaintiffs also fail to adequately allege FCA's intent. "It is not enough to allege that a defendant . . . 'intentionally' interfered because this is nothing more than a recital of some of the required elements for a claim of tortious interference with contract." *Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 846–47 (N.D. Tex. 2011). "Just as in *Twombly* the Court did not automatically credit plaintiffs' generalized assertions of conspiracy, and in *Iqbal* the Court did not credit plaintiff's assertions that defendants 'knew of, condoned, and willfully and maliciously' subjected him to harsh conditions, it is insufficient for [the plaintiff] merely to allege intent." *Id.* (internal citations omitted) (citing cases).

Here, the Complaint mouths the words of these causes of action, but it provides none of the necessary, supporting factual detail. For example, the Complaint alleges that "FCA intentionally and willfully interfered with the APA and the business relationship between Plaintiffs and the Seller by unreasonably and unlawfully rejecting the proposed transfer of the Forest Lane Dealership to Plaintiffs on July 8, 2025," Compl. ¶ 56; "FCA's actions were independently tortious and without legal excuse. FCA acted with malice and in bad faith," *id*. ¶ 56; and "FCA did not reject the transfer in good faith to protect legitimate business interests." *Id.* ¶ 64. There are the same "naked assertions devoid of further factual enhancement" that the Supreme Court has held "will not do." *Iqbal*, 556 U.S. at 678.

When the Complaint's conclusory allegations are disregarded, it reveals that Plaintiffs fail to plead the required element of intent. Plaintiffs do not even try to provide a plausible explanation as to *why* FCA would want to "intentionally and willfully interfere[] with the APA and the business relationship between Plaintiffs and the Seller." Compl. ¶ 56. After all, FCA agreed to enter into a dealer agreement with the Wichita Falls Dealership in March 2025. *Id.* ¶ 56. It would make no

sense for FCA to then immediately "sabotage" that same dealership, *id.* ¶ 46, particularly since the proposed APA was not executed until May 26, 2025. *Id.* ¶ 28.

The plausible explanation for FCA's conduct in the Complaint is not sabotage, but the protection of its own interests. Plaintiffs admit that the Forest Lane dealership they attempted to buy was "a profitable dealership in the Dallas, Texas market—one of the largest and most desirable automotive markets in the country," and "a unique and non-duplicable business opportunity." *Id.* ¶ 50. Plaintiffs also admit that FCA stated that it rejected the Proposed Sale because the Wichita Falls Dealership was performing poorly under FCA's metrics, including selling just six new vehicles in April 2025, the month before the APA. *Id.* ¶¶ 34–35. Plaintiffs label these reasons as "false, pretextual, and unreasonable," but that does not make them so, particularly since Plaintiffs do not dispute the actual figures. *Id.* ¶ 36. Thus, like in *Twombly*, "the complaint itself gives reasons to believe that" FCA lacked the intent that Plaintiffs allege. 550 U.S. at 568.

This failure requires dismissal of the Complaint, as many courts have held in similar circumstances.[1] FCA respectfully requests the Complaint be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

---

[1] *See, e.g.*, *C & K Trucking LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 211547, at *6 (N.D. Tex. Jan. 20, 2021) (dismissing tortious interference claim because "[o]ther than stating the words 'willfully and intentionally,' Plaintiff did not allege facts supporting that Defendant had intent to interfere with any contracts"); *Poole*, 2020 WL 10050562, at *8 (dismissing tortious interference claim after excluding "legal conclusions masquerading as facts" and "mere recitations of legal elements"); *CPM Consulting LLC v. Capsugel US, LLC*, No. 3:17-CV-3059-S, 2019 WL 3769651, at *3 (N.D. Tex. Aug. 9, 2019) (dismissing tortious interference claim for "conclusory allegations of knowledge"); *Ryan, LLC v. Inspired Dev., LLC*, No. 3:12-CV-02391-O, 2013 WL 12137012, at *7 (N.D. Tex. July 18, 2013) (dismissing tortious interference claims as "a bare recitation of the elements of a cause of action*"); In re THEAG N. Arlington LLC*, No. 19-41108-ELM, 2020 WL 7330055, at *29–30 (Bankr. N.D. Tex. Dec. 11, 2020) (dismissing claim where claimant "failed to plead any specific facts in support of their conclusory allegations of tortious interference").

## II.    The Complaint Does Not Plead a Plausible Claim of Tortious Interference with Prospective Business Relations

Plaintiffs have not pled a viable claim of tortious interference with prospective business relations. To establish a claim for tortious interference with prospective business relations, the plaintiff must establish that: "(1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed an independently tortious or wrongful act that prevented the relationship from occurring, with the purpose of harming the plaintiff; and (3) actual harm or damage resulted from the defendant's interference." *C & K Trucking LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 211547, at *7 (N.D. Tex. Jan. 20, 2021).

First, as with their other claim, Plaintiffs fail to adequately allege intent. This alone requires dismissal. *See* discussion *supra*, Argument § 1.

Second, Plaintiffs have not provided "evidence that at least one prospective contract was prevented from occurring." *Hunn v. Dan Wilson Homes, Inc.*, No. 5:12-CV-081-C, 2013 WL 12128677, at *12 (N.D. Tex. Sept. 23, 2013). The APA was not a "prospective" contract, but an actual one. The Complaint therefore suffers from the same infirmities that required dismissal in *Ryan*: "Specifically, there are no facts showing that there was a reasonable probability that [Plaintiffs] would enter into new contracts, that some tortious act by [FCA] prevented that relationship, that [FCA] intended that result or knew interference was certain or substantially certain, or what harm [Plaintiffs] suffered as a result." *Ryan, LLC v. Inspired Dev., LLC*, No. 3:12-CV-02391-O, 2013 WL 12137012, at *7 (N.D. Tex. July 18, 2013). "There are no alleged facts

showing what contracts [Plaintiffs] would have entered into if it had not been for [FCA]'s alleged interference." *Id.*[2]

Additionally, Plaintiffs fail to show that FCA's "conduct was independently tortious or wrongful." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Id.*; *see also, e.g.*, *Phoneternet, L.L.C. v. LexisNexis Risk Sols., Inc.*, 816 F. App'x 909, 914 (5th Cir. 2020) (dismissing tortious interference claim where plaintiff "failed to allege adequately an independent tort or any other meritorious claim").

The Complaint repeatedly *asserts* that FCA engaged in unlawful conduct, but these conclusory statements are again unsupported by specific facts. For example, Plaintiffs allege that FCA's sales performance metric, MSR, is "an unreasonable and discredited measure of dealer sales performance," but this is an opinion or conclusion, not a fact. Compl. ¶ 41. A bare allegation of unreasonableness does not "show" that FCA's use of MSR violates Tex. Occ. Code section 2301.467(a)(1), which states that a manufacturer may not "require adherence to unreasonable sales or service standards."

These failures, including the failure to adequately plead intent, are fatal to the claim. Plaintiffs' claim for tortious interference with prospective business relations should be dismissed.

## III.    FCA's Turndown of the Proposed Sale Was Justified as a Matter of Law

As a final matter, even if Plaintiffs' claims were adequately stated, FCA would still be entitled to dismissal because its conduct was justified under the relevant dealer agreement between

---

[2] *See also, e.g.*, *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at \*11 (S.D. Tex. Mar. 29, 2016), *modified on reconsideration*, No. 4:15-CV-00627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) (dismissing complaint "utterly devoid of any factual allegation that [defendant] had actual knowledge of a prospective business relation and its desire to interfere in that relation was its primary purpose in doing so").

FCA and the Forest Lane Dealership (the "Dealer Agreement").[3] *See* Compl. ¶ 12; Ex. 1. "Justification is an affirmative defense to tortious interference with contract and tortious interference with prospective business relations." *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000). "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994).

"Generally, justification is established ***as a matter of law*** when the acts that the plaintiff complains of as tortious interference are merely the defendant's exercise of its own contractual rights." *Prudential,* 29 S.W.3d at 81 (emphasis added). "In order to prevail on the justification defense, the defendant must prove either the exercise of (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *In re WC Alamo Indus. Ctr., LP*, No. 22-10226-CGB, 2024 WL 40821, at *4 (Bankr. W.D. Tex. Jan. 3, 2024) (internal quotation omitted). "[I]f the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense, and the motivation behind assertion of that right is irrelevant. Improper motives cannot transform lawful actions into actionable torts." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996) (cleaned up).

Here, Paragraph 34 of FCA's Dealer Agreements, including the Dealer Agreement between FCA and the Forest Lane Dealership, addresses the proposed transfer of a dealership. *See* Ex. 1 at

---

[3] FCA's right to approve or disapprove a proposed dealership transfer is grounded in its contract with the selling dealer, *i.e.*, the Dealer Agreement. Plaintiffs' claim arises from FCA's exercise of that right. The Dealer Agreement is "central to the claim and referenced by the complaint," and the Court may consider it in connection with a Rule 12(b)(6) motion to dismiss. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); Compl. ¶ 12.

p. 40. Paragraph 34 provides that a dealer may enter into any sale agreement it likes, but FCA does not have "any obligation . . . to do business with" the proposed purchaser. *Id*. Rather, the purchaser must apply to become an FCA dealer. *Id.* FCA will then "consider and process such application . . . in accordance with its established procedures" and "shall not unreasonably withhold its approval of such an application." *Id.*

Thus, as the drafters of the APA recognized, the Dealer Agreement granted FCA the contractual right to approve or deny any proposed transaction, including the Proposed Sale. *See* Compl. ¶ 30 ("The APA required, as a condition to closing, that FCA issue to G3 a new sales and service agreement . . . approving G3's owners, managers, and other designees, and permitting it to operate the Forest Lane Dealership."). Put another way, the Dealer Agreement gave FCA the "legal right to interfere with" a proposed transaction, including the Proposed Sale, by disapproving of the purchaser. *Texas Beef Cattle*, 921 S.W.2d at 211. Any argument that FCA violated its obligation to not "unreasonably withhold its approval" in doing so is an issue of contract between FCA and the Forest Lane Dealership, not Plaintiffs.

As a result, Plaintiffs cannot state a claim against FCA for tortious interference arising out of FCA's turndown of the Proposed Sale. FCA's defense of justification to tortious interference is "conclusively established" as a matter of law because FCA was merely exercising a contractual right granted by the Dealer Agreement. *Id.* Amendment of the Complaint would be futile because it cannot change this fact. FCA therefore respectfully requests the Complaint be dismissed with prejudice in its entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, FCA respectfully requests the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and for any such other and further relief as the Court deems proper.

Respectfully submitted this 29th day of May, 2026.

*/s/ Brent T. Buyse*
Brent T. Buyse (Texas Bar No. 24105567)
Nelson Mullins Riley & Scarborough LLP
3333 Lee Parkway, Suite 750
Dallas, TX  75219
Telephone: (469) 484-5962
Facsimile: (469) 828-7217
Email: brent.buyse@nelsonmullins.com

Mark T. Clouatre (Texas Bar No. 00793521)
Nelson Mullins Riley & Scarborough LLP
1400 Wewatta Street, Suite 500
Denver, CO 80202
Telephone: (303) 583-9900
Facsimile: (303) 583-9999
Email: mark.clouatre@nelsonmullins.com

Keith Russell (Texas Bar No. 24007966)
Nelson Mullins Riley & Scarborough LLP
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Telephone: (346) 646-6670
Facsimile: (346) 241-3758

*Attorneys for Defendant FCA US LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, the foregoing **DEFENDANT FCA US LLC'S RULE 12(b)(6) MOTION TO DISMISS** was electronically filed with the Clerk of the Court using CM/ECF and served upon Plaintiff's counsel at the following e-mail addresses:

James Bruce Bennett
jbb.chblaw@me.com

Leon Komkov
leonkomkov@gmail.com

*/s/ Brent T. Buyse*
**BRENT T. BUYSE**